**E-Filed 6/9/10**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

TERRY APPLING,

Plaintiff,

v.

WACHOVIA MORTGAGE, FSB, a Federal Savings Bank; WORLD SAVINGS BANK, FA, a Federal Savings Bank; WELLS FARGO BANK, NA, a National Bank Association member; IQ HOME LOANS AND REALTY CORPORATION, a California corporation; ALI MIRZAEI and WILLIAM CHEN,

Defendants.

Case Number C 10-01900 JF (PVT)

**ORDER[1] DENYING MOTION FOR PRELIMINARY INJUNCTION**

[re doc. no. 13]

Plaintiff moves to enjoin Defendants from taking actions that would be adverse to his interest in the subject real property. Defendant Wachovia Mortgage, FSB ("Wachovia") opposes the motion. The Court has considered the moving papers, declarations, and the exhibits presented by counsel at the hearing on May 14, 2010. For the reasons discussed below, the motion will be denied.

[1] This disposition is not designated for publication in the official reports.

## I. BACKGROUND

On May 3, 2010, Plaintiff Terry Appling ("Plaintiff") filed the instant action against Wachovia Mortgage, FSB ("Wachovia"), World Savings Bank, FA ("World Savings"), Wells Fargo, NA ("Wells Fargo"), IQ Home Loans and Realty Corporation ("IQ"), Ali Mirzaei ("Mirzaei"), and William Chen ("Chen") (collectively, "Defendants"). The dispute arises out of a mortgage transaction in connection with which Defendants allegedly are liable for (1) violating the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., (2) violating California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200, *et seq.*, (3) violating California Civ. Code § 2924, (4) violating the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, (5) negligent misrepresentation, (5) breach of fiduciary duty, (6) conversion, (7) breach of contract, and (8) wrongful foreclosure.

### A. Factual history

Plaintiff owns real property located at 175 N. Sunnyvale Avenue, Sunnyvale, CA 94086 (the "Property"). (Complaint ¶ 7.) In or about September 2007, Plaintiff contacted IQ to refinance the Property. (Complaint ¶ 33.) Plaintiff entered into a loan (the "Loan") that was originated by World Savings and secured by the Property. (Complaint ¶¶ 36-37.[2]) The loan documents allegedly were misleading. (Complaint ¶¶ 22-30.) As a condition of the Loan, Plaintiff entered into a Holdback Agreement with World Savings. (Complaint ¶ 77.) Plaintiff deposited $9,915.00 with World Savings in a non-interest-bearing account. (Plaintiff's Declaration in Support of Preliminary Inunction ("Pl.'s Decl. ISO Mot."), Ex. 1 ¶ 1.) The funds were to be used to pay for certain work on the Property. (*Id.* at ¶ 2.) However, the work was never performed, and the funds were not returned to Plaintiff. (Complaint ¶¶ 78, 80.) At some point, Plaintiff apparently defaulted on the Loan, and Defendants served a notice of default and a notice of trustee's sale. (Complaint ¶ 81.) The notice of default included an alleged amount

[2] Wachovia formerly was known as World Savings. (Complaint ¶ 8.)

owed by Plaintiff to Defendants, but Wachovia allegedly did not credit the holdback funds against this amount. (*Id.*) A trustee's sale of the Property was scheduled for May 6, 2010. (Plaintiff's Mot. at 1:14-15.)

B. **Terms of the Loan**

The Loan is a fixed rate "pick-a-payment" loan. (Pl.'s Decl. in ISO Mot., Ex. 4.) The interest rate is fixed at 7.350% for the life of the Loan, which is thirty years. (*Id.*) Each month, Plaintiff is provided with four payment options, and he selects the option that he wishes to use for that month. (Pl.'s Decl. ISO Mot., Ex. 3.) These options include: (1) scheduled principal and interest, (2) interest only, (3) minimum payment, and (4) fifteen-year payment plan. (*Id.*) The scheduled principal and interest payment "covers interest and principal to pay off [the] loan within its scheduled term," and the borrower "will not incur any deferred interests and [he] will reduce [the] loan balance". (*Id.*) The "interest only" payment "covers the interest due but does not reduce [the] loan balance," and the borrower "will not incur any deferred interest". (*Id.*) The fifteen-year payment plan" covers "all interest due and enough principal to pay off [the] loan within a 15-year term," and the borrower "will not incur any deferred interest". (*Id.*)

In contrast, the "minimum payment" is not fixed. (Pl.'s Decl. ISO Mot., Ex. 4 ¶¶ 3(B)-(E).) The rate changes once every twelve months. (*Id.*, ¶ 3(C).) The payment cannot be increased by more than 7.5% of the then-existing "principal and interest payment". (*Id.*, ¶ 3(D).) The minimum payment is "the smallest amount [the borrower] is allowed to pay." (*Id.*, Ex. 3.) If the minimum payment "is larger than the Interest Only option or equal to the Scheduled Principal and Interest option", some of the payment options may not appear on the loan statement. (*Id.*, Ex. 3.) If Plaintiff makes a payment that is "less than the interest owing on the loan, [he] will incur deferred interest and the principal balance of [his] loan will increase." (*Id.*) If the principal balance of the loan exceeds 125% of the amount Plaintiff originally borrowed, the payment cap is overridden, and the minimum payment automatically becomes the amount

necessary to pay the principal and interest by the maturity date. (*Id.*, Ex. 4 ¶ 3(F).)

**C. Procedural history**

On May 3, 2010, Plaintiff filed an application for a temporary restraining order ("TRO") and motion for a preliminary injunction to prevent the trustee's sale. On the same day, Plaintiff's counsel faxed copies of the complaint and moving papers to Wachovia. (Spanner Decl. in Support of Pl.'s Mot. at ¶ 6.) On May 5, 2010, the Court granted Plaintiff's application for a TRO and set a hearing on Plaintiff's motion for a preliminary injunction for May 14, 2010 .

## II. LEGAL STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate [1] 'that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 129 S. Ct. at 374)). The issuance of a preliminary injunction is committed to the discretion of the District Court. *Indep. Living Ctr.*, 572 F.3d at 651.

Plaintiff argues that a preliminary injunction also is appropriate at this early stage in the litigation when a plaintiff can raise "serious questions" going to the merits, even without a showing of likelihood of success on the merits. Before the Supreme Court's decision in *Winter*, the Ninth Circuit had held that:

> "[a] preliminary injunction is appropriate when a plaintiff demonstrates either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor. [citation] These two options represent extremes on a single continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor."

*Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008). In *Winter*, the Supreme Court expressly disapproved the "possibility standard" because it was "too lenient". *Winter*, 129 S. Ct. at 375. Following *Winter*, the Ninth Circuit found that "[t]he [Supreme] Court succinctly stated the rule to be as follows: 'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.' [*Winter*,] 129 S. Ct. at 374. To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." *American Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

While *Winter* requires a showing of the likelihood of success on the merits, the second prong of the *McNair* standard would require a showing of only a "serious question going to the merits", which is something less than a showing of likelihood. Plaintiff cites post-*American Trucking* decisions that do appear to apply a lesser standard. *See Habeas Corpus Res. Ctr. v. United States DOJ*, No. C 08-2649 CW, 2009 U.S. Dist. LEXIS 7562, *11 (N.D. Cal. Jan. 20, 2009) (quoting *Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1047, 1049 (9th Cir. 2008)) ("'When the balance of harm 'tips decidedly toward the plaintiff,' injunctive relief may be granted if the plaintiff raises questions 'serious enough to require litigation.'"); *Inspection Mgmt. Sys. v. Open Door Inspections, Inc.*, 2009 U.S. Dist. LEXIS 23524, *8-9 (E.D. Cal. Mar. 26, 2009) (citing *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998)) (" These two alternatives represent two points on a sliding scale, pursuant to which the required degree of irreparable harm increases or decreases in inverse correlation to the probability of success on the merits."); and *Save Strawberry Canyon v. Dept. of Energy*, No. C 08-03494 WHA, 2009 WL 1098888, *3 (N.D. Cal. April 22, 2009) (concluding that *American Trucking* did not foreclose the traditional pre-*Winter* sliding-scale approach). *See also Greater Yellowstone Coalition v. Timchak*, 323 Fed. Appx. 512, 514 (9th Cir. 2009) (remanding a case with "serious questions"

on the merits so that the district court could properly consider irreparable harm). However, the Ninth Circuit subsequently has reiterated that "'[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable.' [citation] . . . The proper legal standard for preliminary injunctive relief requires a party to demonstrate [1] 'that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Stormans*, 586 F.3d at 1127 (internal citations omitted).

## III. DISCUSSION

### A. Likelihood of success on the merits

In order to be granted a preliminary injunction, Plaintiff must show that he is likely to succeed on the merits of a claim that would entitle him to the equitable remedy that he seeks. Plaintiff alleges a number of claims for relief, four of which could be sufficient to support his motion for an injunction: conversion, wrongful foreclosure, TILA violations, and UCL violations.

#### 1. Conversion and wrongful foreclosure

"The procedure for foreclosing on security by a trustee's sale pursuant to a deed of trust is set forth in Civil Code section 2924 *et seq*. The statutory requirements must be strictly complied with, and a trustee's sale based on a statutorily deficient notice of default is invalid." *Miller v. Cote*, 127 Cal. App. 3d 888, 894 (Cal. Ct. App. 1982). Cal. Civ. Code § 2924(c) requires that a notice of default include the amount of the past due payments that are owed. Plaintiff contends that the notice of default is inaccurate because Wachovia failed to apply the unreturned holdback funds to the amount past due, resulting in conversion of the holdback funds and wrongful foreclosure.

The Holdback Agreement provides that "If Borrower should fail to fulfill any of the terms or conditions of the Note, the Security Instrument, or this Holdback Agreement, Lender

may declare the entire balance of principal and interest on the loan immediately due and payable and may apply any amount remaining in the Holdback Funds to such balance in accordance with the provisions in the Security Instrument." (Pl.'s Decl. ISO Mot., Ex. 1 ¶ 6.) Plaintiff alleges that he deposited $9,915.00 into the holdback account and that the funds were not otherwise expended or returned. (Complaint ¶¶ 78-80.) However, Wachovia presents evidence that the holdback funds in fact were applied, with Plaintiff's knowledge, to the principal of the loan balance. (*See* Declaration of Bonnie Ransom ("Ransom Decl."), Ex. 3 at 25 (letter dated June 17, 2008 from Wachovia to Plaintiff informing Plaintiff that the $9,915.00 of Holdback funds would be applied the loan's principal balance unless Plaintiff responded by June 17, 2008), and Ex. 4 at 29 (invoice applying $9,915.00 to the principal balance in July 2008).)

Plaintiff disputes the foundation and reliability of Wachovia's records, arguing that Wachovia's declarant insufficiently alleges personal knowledge of the documents and Wachovia's record-keeping requirements. Plaintiff asserts that he never received a copy of the letter in question and that he never was informed that the holdback funds had been applied to the principal of his loan. (Plaintiff's Decl. in Support of Reply to OSC for Preliminary Injunction, ¶¶ 3-4.) Notwithstanding these objections, while Ms. Ransom's declaration is somewhat conclusory with respect to whether she is acting the regular course of business, the ultimate issue for present purposes is whether Plaintiff is likely to succeed on the merits of his claim. The Court concludes that he is not.

**2. TILA violations and the UCL**

Although Plaintiff seeks only damages under TILA, he alleges that Defendants' violation of TILA also is a violation of the UCL, which authorizes injunctive relief.[3]

---

[3] The UCL prohibits any "unlawful, unfair or fraudulent business practices." *See Cel-Tech Commc'ns, Inc. v Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).

**a. TILA violations**

TILA is a consumer protection statute that seeks to "avoid the uninformed use of credit." 15 U.S.C. § 1601(a). The statute is designed "to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit." *King v. California,* 784 F.2d 910, 915 (9th Cir. 1986); *see also Semar v. Platte Valley Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 705 (9th Cir. 1986) ("Congress designed [TILA] to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions."). Because the statute is remedial in nature, it is to be applied broadly in favor of the consumer. *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989); *see also Plascencia v. Lending 1st Mortgage,* No. C 07-4485 CW, 2008 WL 1902698, *3 (N.D. Cal. Apr. 28, 2008) ("TILA has been liberally construed in the Ninth Circuit.") (internal quotations and citation omitted). Thus, even "[t]echnical or minor violations" of TILA or its implementing regulations may impose liability on the creditor. *Semar,* 791 F.2d at 704 (noting also that "[t]o insure that the consumer is protected . . . [TILA and its implementing regulations must] be absolutely complied with and strictly enforced").

Plaintiff alleges that Defendants violated TILA by failing clearly and conspicuously to disclose the certainty of negative amortization, the basis for the payment schedule, and the actual interest rate of the loan.

**i. Disclosure of the certainty of negative amortization**

Plaintiff alleges that Defendants violated 12 C.F.R. § 226.19(b)(2)(vii) by failing to disclose that negative amortization was certain to occur if he made only the minimum payments shown in the payment schedule. Section 226.19 requires that a lender disclose "[a]ny rules relating to changes in the index, interest rate, payment limitations, negative amortization, and interest rate carryover." 12 C.F.R. § 226.19(b)(2)(vii). In addition, with respect to variable-rate loans with payment caps, such as the Loan at issue here, the Commentary states that "[i]f a

consumer is given the option to cap monthly payments that may result in negative amortization, the creditor *must* fully disclose the rules relating to the option, including the effects of exercising the option (*such as negative amortization will occur and the principal loan balance will increase*)." 12 C.F.R. Pt. 226, Supp. I. ¶ 19(b)(2)(vii)-2 (emphasis added).

**ii. The Payment Schedule**

The payment schedule contained in the Statement provides the monthly minimum payments for the duration of the loan. (Pl.'s Decl. ISO Mot., Ex. 2.) The Board's comment to 12 C.F.R. § 17(c)(1)-10(v) provides examples of acceptable payment schedules, and these schedules expressly require the lender to list payments reflecting the effect of any payment cap. The minimum payments on Plaintiff's payment schedule increase steadily by 7.5% over the first 120 payments.[4] (Pl.'s Decl. ISO Mot., Ex. 2.) After that, the minimum payment increases by almost fifteen percent (presumably, this is the point where the principal has reached 125% of its original value and the payment cap is overridden).

**iii. Disclosure of the actual interest rate**

Section 226.19(b) requires lenders to disclose "any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carry-over." 12 C.F.R. § 226.19(b)(2)(vii). Section 1638(a)(4) requires lenders to disclose the cost of a loan to the borrower "as an 'annual percentage rate' using that term." 15 U.S.C. § 1638(a)(4). Section 1638(a)(8) requires lenders to provide a brief "descriptive explanation[]" of the APR. 15 U.S.C. § 1638(a)(8). TILA defines the term "APR" as the "cost of your credit as a yearly rate." 12 C.F.R. § 226.18(e). Where, as here, a loan's initial interest rate subsequently is adjusted, the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is

---

4 Seven and one half percent coincides with the payment cap. (*See* Plaintiff's Decl. ISO Mot., Ex. 4 ¶ 3(D).)

charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation." Commentary, 12 C.F.R. Pt. 226.(17)(C)-6. The disclosure and explanation of the cost of the loan as an annual percentage rate must be clear and conspicuous. Commentary, 12 C.F.R. Pt. 226.17(a)(1)-1.

In this instance, the dual terms of the Loan may have been obscured by the disclosures relating to the interest rates. In the statement that Plaintiff received in connection with his loan, the listed APR was 8.063%. (Pl.'s Decl. ISO Mot., Ex. 2.) As required by TILA, the APR was described as "[t]he cost of your credit as a *yearly rate*." (*Id.* (emphasis added).) However, the loan itself states: "I will pay interest at a *yearly rate* of 7.350%." (*Id.*, Ex. 4 ¶ 2(emphasis added).) Nonetheless, this allegation hinges upon a highly technical reading of TILA and Regulation Z, and the disclosure used the specific words that Regulation Z required. The Court concludes that Plaintiff has not established a likelihood of success on the merits with respect to this aspect of his claim.

**iv. The disclosures should be viewed together in context**

All of the information provided to Plaintiff must be considered in assessing whether the disclosures were clear, conspicuous, and complete. *See, e.g.*, *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006); *Roberts v. Fleet Bank (R.I.)*, 342 F.3d 260, 267-68 (3d Cir. 2003); *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1381 (11th Cir. 1984). Viewed in isolation, many of the disclosures were accurate. However, the information must be viewed in context of how it was disclosed to Plaintiff.

The core of Plaintiff's argument is that the minimum payment *necessarily* was insufficient to pay the monthly interest on the loan, making negative amortization a certainty if Plaintiff made only the payments specified in the payment schedule. While the payment schedule accurately reflected the minimum payment owed under the payment cap, "[i]f a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor *must* fully disclose

the rules relating to the option, including the effects of exercising the option (*such as negative amortization will occur and the principal loan balance will increase*)." 12 C.F.R. Pt. 226, Supp. I. ¶ 19(b)(2)(vii)-2 (emphasis added).

The Loan states that the "initial monthly payment amount . . . *may* not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance." (Pl.'s Decl. in Support, Ex. 4 ¶ 3(B) (emphasis added).) However, it appears that the initial (minimum) monthly payment – $1,852.90 – necessarily would result in deferred interest on a $425,750 loan at 7.350% interest. *See Id.* Defendants argue that negative amortization was not certain to occur because Plaintiff could elect to pay more than the minimum payment. But Plaintiff does not claim that negative amortization was certain to occur in connection with all conceivable payment options and at all times. Rather, he alleges that he was certain to experience negative amortization at some point during the life of the loan if he made the minimum payments listed on the payment schedule, which would lead to the exercise of the payment cap. Plaintiff argues that Defendants' disclosures concerning negative amortization were *misleading* given that fact. Such a claim has been found cognizable by this Court and numerous others. *See, e.g.*, *Mincey v. World Savings Bank*, FSB, 614 F.Supp.2d 610, 636-37 (D.S.C. 2008); *Plascencia v. Lending 1st Mortgage*, No. C 07-4485 CW, 2008 WL 1902698, at *5-6 (N.D. Cal. Apr. 28, 2008); *Pham v. TJ Financial, Inc.*, No. CV 08-275 ABC (JCx), 2008 WL 3485589, at *2, (C.D. Cal. August 11, 2008); *see also Monaco v. Bear Stearns Res. Mortgage*, 554 F. Supp. 2d 1034, 1042 n.11 (C.D. Cal. 2008); *Avila v. Stearns Lending, Inc.*, No. CV 08-0419-AG, 2008 WL 1378231 (C.D. Cal. April 7, 2008).

However, to conclude that Plaintiff can state a TILA claim does not mean that he reasonably is entitled to injunctive relief with respect to that claim. Plaintiff was given four payment options each month and a very detailed explanation of each option. (Pl.'s Decl. ISO Mot., Ex. 3.) He was told explicitly that if the minimum payment was less than the interest only

payment, he would incur deferred interest that would be added to the principal. (*Id.*) Wachovia specifically used the term "negative amortization" to describe the deferred interest that would result if the mortgage payments were less than the interest due. (*Id.*) Viewing the disclosures as a whole, Wachovia did disclose the certainty of negative amortization if Plaintiff made minimum payments in an amount less than that of the interest-only payment.

**b. Unfair Competition Law**

Wachovia argues that Plaintiff's UCL claim is preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461. *See Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (concluding that a UCL claim predicated on "disclosures and advertising" is preempted by HOLA when alleged against a federal thrift subject to HOLA). Because Plaintiff's UCL claim is predicated on inadequate TILA disclosures, it is subject to preemption if Defendants are subject to HOLA. *See Newbeck v. Wash. Mut. Bank*, No. C 09-1599 CW, 2010 U.S. Dist. LEXIS 3830 (N.D. Cal. Jan. 19, 2010) (concluding that "[t]o the extent that [p]laintiffs' UCL claims here rest on allegations of non-disclosure and the terms of [the] loan, they are preempted by federal law ["HOLA"].").

Wachovia relies upon *Curcio v. Wachovia Mortg. Corp.*, 2009 U.S. Dist. LEXIS 96155 (S.D. Cal. Oct. 14, 2009), in which the court determined, after reviewing judicially noticeable documents from the Federal Deposit Insurance Corporation, that Wachovia Mortgage, FSB was subject to HOLA. In the instant case, Plaintiff's loan originated not with Wachovia but with World Savings Bank, FSB. (Pl.'s Decl. ISO Mot., Ex. 4.) However, Plaintiff acknowledges that Wachovia Mortgage formerly was known as World Savings Bank and that World Savings Bank was a federally-chartered bank. (Complaint ¶¶ 8-9.) Wachovia alleges in a conclusory manner that Wachovia Mortgage, FSB was "formerly World Savings Bank, FSB, now a division of Wells Fargo Bank, NA". (Wachovia's Opp'n at 1:3-4.) Without concluding as a matter of law that Defendants were subject to HOLA at the time the loan was executed, it appears *likely* that

Defendants were subject to HOLA. For this reason, the Court concludes that Plaintiff's TILA-based UCL claim is not likely to succeed on the merits.

**B. Irreparable harm**

Unless the Court enjoins Defendants, the Property likely will be sold at a trustee's sale in the near future. Real property is unique, and damages therefore are inadequate to remedy the loss of such property. *See Sundance Land Corp. v. Community First Federal Sav. and Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988) (finding that "[s]ince the property at issue is unique, Sundance's legal remedy – i.e., damages – is inadequate. Sundance's complaint therefore meets the equitable criteria for stating a cause of action for injunctive relief."). Even if a "trustee's sale based on a statutorily deficient notice of default is invalid", *Miller*, 127 Cal. App. 3d at 894, failure to comply with Section 2924 does not affect the validity of a sale in favor of a bona fide purchaser when the deed of sale recites compliance with the law. Cal. Civ. Code § 2924(c). Thus, if the trustee's sale is not enjoined, Plaintiff is likely to be harmed irreparably by the sale.

**C. Balance of hardships**

Absent injunctive relief, the Property will be sold at a trustee's sale. At the same time, Defendants would continue to suffer unmitigated economic losses on their loan to Plaintiff. The balance of equities tips in favor of Plaintiff because the Loan remains secured by the Property.

**D. Public interest**

Enjoining a valid trustee's sale would not be in the public interest. Plaintiff appears to be in arrears on the Loan, and the contract between Plaintiff and Defendants, which created a security interest in the Property, should not be disregarded lightly by the Court. However, by its enactment of Cal. Civ. Code § 2924, the legislature has expressed a strong public interest in avoiding an invalid trustee's sale.

## IV.Conclusion

Although the balance of hardships tips in his favor, the Court concludes that Plaintiff has

not established a likelihood of success on the merits of his claims. Accordingly, the TRO will be vacated, and the motion for a preliminary injunction will be denied.

**IT IS SO ORDERED**

DATED: 6/7/ 2010

JEREMY FOGEL
United States District Judge