**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TERRY APPLING,<br><br>                Plaintiff,<br>    v.<br><br>WACHOVIA MORTGAGE, FSB, a Federal Savings Bank; WORLD SAVING BANK, FA, a Federal Savings Bank; WELLS FARGO BANK, NA, a National Banking Association member; IQ HOME LOANS AND REALTY CORPORATION, a California Corporation; ALI MIRZAEI and WILLIAM CHEN,<br><br>                Defendants. | Case No.: 10-CV-01900-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

Defendants Wachovia Mortgage (formerly known as World Savings Bank, FSB, and Wachovia Mortgage, FSB, now a division of Wells Fargo Bank, NA) and Wells Fargo Bank, NA, move to dismiss Plaintiff's complaint. Having considered the pleadings and certain declarations and exhibits appropriately considered on a motion to dismiss, as well as the arguments of counsel, the Court grants Defendants' motion in part and denies it in part.

1

Case No.: 10-CV-01900-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

## I. BACKGROUND

### A. Procedural History

On May 3, 2010, Plaintiff filed the instant action against Wachovia Mortgage, FSB ("Wachovia"), World Savings Bank, FA ("World Savings"), Wells Fargo Bank, NA ("Wells Fargo"), IQ Home Loans and Realty Corporation ("IQ"), Ali Mirzaei, and William Chen.[1] The dispute arises out of a mortgage transaction in connection with which Defendants allegedly are liable for (1) violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq.; (2) negligent misrepresentation; (3) violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq.; (4) breach of fiduciary duty; (5) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200, et seq.; (6) conversion; (7) breach of contract; and (8) wrongful foreclosure.

Also on May 3, 2010, Plaintiff filed an application for a temporary restraining order and a motion for a preliminary injunction to enjoin the sale of his home pending the resolution of this case. Pl.'s Appl. for TRO and Mot. for Prelim. Inj. (TRO Appl.) 1, ECF No. 3. The Court granted the TRO, Order Granting Appl. for TRO and Setting Hearing on Preliminary Injunction, ECF No. 9, but subsequently denied Plaintiff's motion for a preliminary injunction. *Appling v. Wachovia Mortgage, FSB*, No. C 10-01900, 2010 WL 2354138 (N.D.Cal. June 9, 2010). Defendants Wachovia and Wells Fargo now move to dismiss the entire action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### B. Factual History

At the time Plaintiff initiated this action, he owned real property located at 175 N. Sunnyvale Avenue, Sunnyvale, CA 94086 (the "Property"). Compl. ¶ 7. On or about November 5, 2007, Plaintiff entered into a fixed rate "pick-a-payment" loan originated by World Savings and secured by the Property. Compl. ¶¶ 36-37. The terms of the Loan are described in detail in the

---

[1] World Savings, the originator of Plaintiff's loan, was renamed Wachovia Mortgage, and Wachovia Mortgage is now a division of Wells Fargo. Defs.' Notice of Mot. and Mot. to Dismiss Compl. (Defs.' Mot.) 3. Only the moving Defendants Wachovia and Wells Fargo ("the Bank Defendants") have appeared in this action. There is no indication that IQ, Ali Mirzaei, and William Chen (collectively, "the IQ Defendants") have been served. Thus, all references in this Order to "Defendants" refer only to Wachovia and Wells Fargo, unless otherwise specified.

2
Case No.: 10-CV-01900-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Order Denying Motion for Preliminary Injunction issued by Judge Fogel on June 9, 2010. *Appling v. Wachovia Mortgage, FSB*, No. C 10-01900, 2010 WL 2354138 (N.D.Cal. June 9, 2010). Essentially, during the duration of the loan, Plaintiff could choose among four payment options each month, including: 1) a payment covering enough interest and principal to pay off the loan within its scheduled 30-year term; 2) a payment covering interest only; 3) a minimum payment representing the smallest payment permitted, which may not be sufficient to cover the interest due on the loan; and 4) a payment covering enough interest and principal to pay off the loan within 15 years. Decl. of Terry Appling in Supp. of Appl. for TRO and Mot. for Prelim. Inj. (TRO Decl.) Ex. 3, ECF No. 4.[2] The minimum payment amount is subject to change every twelve months on the "payment change date." TRO Decl. Ex. 4. If the borrower makes minimum payments less than the interest owing on the loan, any unpaid interest is deferred and added to the principal. TRO Decl. Ex. 3. If this happens, then on the payment change date, the minimum payment is increased to the amount necessary to pay the principal and interest by the maturity date of the loan (subject to a payment cap that limits the amount by which the monthly payments can be increased, but which is overridden if the principal balance exceeds 125 percent of the original loan amount). TRO Decl. Ex. 4. Plaintiff alleges that the loan documents describing these terms were misleading and did not clearly and conspicuously disclose the certainty that negative amortization would occur if Plaintiff followed the payment schedule set forth in the TILA Disclosure Statement accompanying the loan documents. Compl. ¶¶ 24-25, 27, 28, 38.

Additionally, as a condition of the Loan, Plaintiff entered into a Holdback Agreement with World Savings. Compl. ¶ 77. Pursuant to the Holdback Agreement, World Savings retained over $9,000 from the loan funds in a non-interest-bearing escrow account, to be disbursed to pay for work completed on the Property. Compl. ¶ 77. No work was ever performed on the property, and the holdback funds were never distributed to Plaintiff. Compl. ¶ 78-79. At some point, Plaintiff apparently defaulted on the Loan, and Defendants served a notice of default and a notice of

---

[2] As discussed later in this Order, the Court has determined that it may consider the exhibits Plaintiff submitted in support of his TRO application in ruling on the motion to dismiss. *See infra* pp. 4-6.

3
Case No.: 10-CV-01900-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

trustee's sale.  Compl. ¶ 81. The notice of default included an alleged amount owed by Plaintiff to Defendants, but Wachovia allegedly did not credit the holdback funds against this amount. *Id.* Plaintiff's Property has since been sold.  Pl.'s Opp'n to Defs.' Mot. to Dismiss Compl. (Pl.'s Opp'n) 15.

## II.  LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc.*, 606 F.3d 658, 664 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008).  While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

If the Court concludes that the Complaint should be dismissed, it must then decide whether to grant leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III. CONSIDERATION OF MATERIALS BEYOND THE PLEADINGS

Before proceeding to the merits of Defendants' motion, the Court must first determine what materials outside the pleadings it may consider in ruling on the motion.  Defendants have requested

4

Case No.: 10-CV-01900-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

judicial notice of several documents relating to the corporate status and regulation of the banks involved in this action. Additionally, Plaintiff and Defendants previously submitted declarations and other materials beyond the pleadings in connection with the motions for a temporary restraining order and preliminary injunction that Plaintiff brought earlier in this case.

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Pro. 12(d). If a motion to dismiss is converted to summary judgment in this way, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

There are, however, two exceptions to the general rule forbidding consideration of extrinsic evidence on a 12(b)(6) motion. *Lee*, 250 F.3d at 688. First, a court may take judicial notice of matters of public record outside the pleadings. *Id.* at 689. Second, a court may consider "material which is properly submitted as part of the complaint. *Id.* at 688 (internal quotation marks omitted). Such consideration may extend to documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998) (internal quotation marks omitted), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

### A. Request for Judicial Notice

Defendant Banks request judicial notice of records of the Office of Thrift Supervision, including copies of 1) the certificate of corporate existence of World Savings Bank, FSB; 2) a letter from OTS reflecting the name change from World Savings Bank, FSB, to Wachovia Mortgage, FSB; and 3) Wachovia Mortgage's charter. Req. for Judicial Notice in Supp. of Defs.' Mot. to Dismiss Compl. (RJN) 2, Ex. 1-3. A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose

accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir.1993). The Court concludes that these government records and public documents are not subject to reasonable dispute and therefore grants Defendants' request for judicial notice. *See Lopez v. Wachovia Mortg.*, No. C 10-01645, 2010 WL 2836823, at *2 (N.D.Cal. 2010) (taking judicial notice of nearly identical documents).

### B. Holdback Agreement, TILA Disclosure Statement, and Loan Agreement

In support of his application for a TRO, Plaintiff filed a declaration with attached exhibits containing copies of the holdback agreement, TILA disclosure statement, and loan agreement that are at issue in this action. TRO Decl. Here, Plaintiff's complaint explicitly refers to the holdback agreement, Compl. ¶ 77, the TILA disclosure statement, Compl. ¶¶ 25, 30, and the loan agreement, Compl. ¶¶ 25, 30, 37, 58, and his claims are "predicated upon" these documents. *Parrino*, 146 F.3d at 706. Plaintiff offered the documents himself, and Defendants have not disputed their authenticity. Therefore, although the documents were not technically part of Plaintiff's complaint, the Court finds that they are documents "whose contents are alleged in a complaint and whose authenticity no party questions." *Id.* Thus, the Court will consider them in ruling on the motion to dismiss.

### C. Records Submitted by Wells Fargo

Finally, in support of their opposition to Plaintiff's motion for preliminary injunction, Defendants submitted a declaration and exhibits documenting the payment history on Plaintiff's loan and activity related to the Holdback Agreement. Decl. of Bonnie Kathleen Ransom in Supp. of Defs.' Opp'n to Pl.'s Mot. for Preliminary Injunction, ECF No. 12. Although this information appears relevant to the lawsuit, Plaintiff's claims are not predicated on the documents offered by Defendants and he makes no reference to them in his Complaint. Moreover, Plaintiff has disputed the foundation and reliability of these records. Order Denying Mot. for Prelim. Inj. 7, ECF No. 19. Therefore, the Court excludes these materials from consideration in ruling on the motion to dismiss.

### IV. DISCUSSION

#### A. TILA Violations

In his first cause of action, Plaintiff alleges that Defendant Banks violated the disclosure requirements of TILA, 15 U.S.C. § 1638, by 1) failing to clearly and conspicuously disclose a single annual percentage rate ("APR") applicable to his loan and payment schedule, and 2) failing to disclose the certainty of negative amortization. Defendant argues that these claims are barred by the one-year statute of limitations applicable to claims for damages under TILA. 15 U.S.C. § 1640(e). Plaintiff contends that equitable tolling applied to suspend the statute of limitations and that granting Defendants' motion to dismiss on statute of limitation grounds is therefore inappropriate.

As a general rule, the one-year limitations period in Section 1640(e) runs from the date of the consummation of the credit transaction at issue. *King v. Caifornia*, 784 F.2d 910, 915 (9th Cir. 1986). In this case, consummation occurred on November 5, 2007, when Plaintiff entered into the loan agreement, Compl. ¶ 37, and the statute of limitations expired on November 5, 2008, approximately one-and-a-half years before Plaintiff filed the instant action. However, "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King*, 784 F.2d at 915. The Ninth Circuit has stated that because a determination on equitable tolling often depends on matters outside the pleadings, "it is not generally amenable to resolution on a Rule 12(b)(6) motion." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (internal quotations and citation omitted). A claim may be dismissed on the ground that it is barred by the statute of limitations only when "the running of the statute is apparent on the face of the complaint" – that is, when "the face of the complaint establishe[s] facts that foreclose[] any showing of reasonable diligence." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation marks and citations omitted). As long as the complaint, liberally construed, "adequately alleges facts showing the potential applicability of the equitable tolling doctrine," a motion to dismiss should

7

Case No.: 10-CV-01900-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

not be granted. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993). However, if a plaintiff "fails to allege facts demonstrating that he could not have discovered the alleged violations by exercising reasonable diligence," dismissal is appropriate. *Rosenfeld v. JPMorgan Chase Bank, N.A.*, No. C 09-6070, 2010 WL 3155808 (N.D.Cal. 2010) (citing *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902-03 (9th Cir. 2003)).

### 1. Failure to disclose annual percentage rate

Plaintiff first alleges that Defendant Banks violated TILA by disclosing an interest rate in the TILA disclosure statement that differed from the interest rate disclosed in the Note and by failing to clearly and conspicuously disclose which annual interest rate the payment schedule in the TILA disclosure statement was based upon. Compl. ¶¶ 24-27. Plaintiff argues that equitable tolling is potentially applicable to this claim because the contradictory interest rates fraudulently concealed the violations and prevented timely discovery of the cause of action. However, it is the contradictory interest rates themselves that form the basis of the TILA action, and these were clearly evident from the face of the loan agreement and TILA disclosure statement, Compl. ¶ 25, documents Plaintiff received at the time he entered into the loan. Although Plaintiff claims that he was prevented from reviewing the loan documents before he signed them at closing, Compl. ¶40, he does not allege that Defendants prevented him from reviewing the loan documents after closing or that he was otherwise prevented from discovering the facially contradictory interest rate disclosures within the one-year statute of limitations period. Rather, Plaintiff was "in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed." *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003). Because Plaintiff has failed to allege facts demonstrating that he could not have discovered the contradictory interest rates with reasonable diligence, the Court finds that the one-year statute of limitations bars this claim as set forth in the Complaint. The claim alleging TILA violations based on the disclosure of contradictory interest rates is therefore dismissed, and Plaintiff is granted leave to amend to allege facts demonstrating grounds for equitable tolling.

8

Case No.: 10-CV-01900-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

### 2.   Failure to disclose the certainty of negative amortization

Plaintiff also alleges that Defendants violated TILA by failing to disclose that negative amortization was certain to occur under the payment schedule set forth in the TILA Disclosure Statement. Compl. ¶¶ 28-30. According to Plaintiff, the Note and accompanying disclosures stated only that negative amortization was a possibility and failed to disclose that the payment schedule, if followed, actually guaranteed negative amortization. Plaintiff cites numerous cases that consider precisely these circumstances and conclude that the pleadings do not foreclose the possibility that equitable tolling may apply to such claims. *See, e.g.*, *Plascencia v. Lending 1st Mortg.*, 583 F.Supp.2d 1090, 1097 (N.D.Cal. 2008) (finding that equitable tolling may apply to claim that TILA disclosures, though factually accurate, were insufficient to inform plaintiffs that negative amortization was certain to occur); *Amparan v. Plaza Home Mortg., Inc.*, 678 F.Supp.2d 961, 968-69 (N.D.Cal. 2008) (finding that equitable tolling may apply to claim that loan documents failed to clearly disclose the certainty of negative amortization if plaintiff followed the payment schedule set forth in the TILA Disclosure Statement). This Court agrees with these decisions. Taking Plaintiff's allegations as true, "[i]t is possible that a reasonable person in Plaintiff's position would not have detected the negative amortization allegedly built into the loan within the one-year limitations period." *Id.* at 969. Because equitable tolling remains a possibility, dismissal on statute of limitations grounds is not appropriate. Defendants do not challenge the merits of this claim in their motion. Therefore, the motion to dismiss the claim for TILA violations based on failure to disclose the certainty of negative amortization is denied.

### B.   Violation of Fair Credit Reporting Act

In his third cause of action, Plaintiff claims that Defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., by failing to provide Plaintiff with documents and information regarding his credit score. Compl. ¶¶ 44-46. Defendants argue that this claim is time-barred and facially deficient. Defs.' Mot. 8. At the hearing, Plaintiff conceded an inability to state a claim under the FCRA and indicated his intent to withdraw this claim. Accordingly, Plaintiff's third cause of action for violations of the FCRA is dismissed with prejudice.

### C. Preemption of State Law Claims in Plaintiff's Second, Fourth, and Fifth Causes of Action

In addition to the federal claims asserted under TILA and FCRA, Plaintiff alleges three state law claims that Defendants argue are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, et seq., and, to a lesser extent, by TILA.[3]

Before addressing Defendants' preemption arguments, the Court must determine whether HOLA applies to this action. Federal savings associations, including federal savings banks, are subject to HOLA and regulated by the Office of Thrift Supervision (OTS). 12 U.S.C. § 1464; *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008). In contrast, federally chartered banks are subject to regulation by the Office of the Comptroller of the Currency under the National Banking Act. *See Bank of America v. City and County of San Francisco*, 309 F.3d 551, 561-62 (9th Cir. 2002). Plaintiff argues that HOLA does not apply to this case because the only surviving Bank Defendant is Wells Fargo, a federally chartered bank not subject HOLA.[4] However, Plaintiff's loan originated with World Savings Bank, which was a federal savings bank subject to HOLA and OTS regulations. RJN Ex. 1. World Savings Bank later changed its name to Wachovia Mortgage, FSB, remaining under the regulatory authority of OTS and subject to HOLA. RJN Ex. 2. Wachovia Mortgage is now a division of Wells Fargo. Thus, although Wells Fargo itself is not subject to HOLA and OTS regulations, this action is nonetheless governed by HOLA because Plaintiff's loan originated with a federal savings bank and was therefore subject to the requirements set forth in HOLA and OTS regulations. *Lopez v. Wachovia Mortg.*, 2010 WL

---

[3] Because the Court finds that HOLA preemption bars Plaintiff's claims, the Court does not address the issue of TILA preemption.

[4] Plaintiff also claims that Wells Fargo is collaterally estopped from arguing that HOLA applies to preempt state claims asserted against it because Wells Fargo unsuccessfully litigated this claim in two prior cases. Pl.'s Opp'n 5. However, the issue considered in the cases Plaintiff cites is not identical to the issue presented here. In those cases, the court found that HOLA preemption did not apply because Wells Fargo did not allege or argue any facts establishing that it fell within OTS jurisdiction. *Juarez v. Wells Fargo Bank, N.A.*, 2009 No. CV 09-3104, U.S. Dist. LEXIS 110892, at \*5 (C.D.Cal. Nov. 11, 2009); *Tsien v. Wells Fargo Home Mortg.*, No. C 09-04790, 2010 U.S. Dist. LEXIS 52804, at \*12 (N.D.Cal. May 28, 2010). Here, Wells Fargo does not argue that it is subject to HOLA or OTS jurisdiction; rather, it argues that HOLA governs because the loan originator was subject to HOLA, and the Court has taken judicial notice of documents establishing HOLA's applicability.

2836823, at *2 (N.D. Cal. 2010) (finding that although Wells Fargo is a federally chartered national bank, the action is governed by HOLA because the loan originated with World Savings Bank, which was regulated by OTS and subject to HOLA).

Since this action is governed by HOLA, the court next must consider the scope of HOLA preemption. The Ninth Circuit has described HOLA and OTS regulations as a "radical and comprehensive response to the inadequacies of the existing state system." *Silvas*, 514 F.3d at 1004 (quoting *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), *aff'd*, 445 U.S. 921 (1980)). In its role as principal regulator of federal savings associations, OTS promulgated an express field preemption regulation codified at 12 C.F.R. § 560.2. The regulation states that "OTS hereby occupies the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a). The effect of this regulation is to leave virtually "no room for state regulatory control." *Silvas*, 514 F.3d at 1004 (quoting *Conference of Fed. Sav.*, 604 F.2d at 1257, 1260).

OTS regulations provide guidance on determining whether a state law is preempted. Section 560.2(b) provides a nonexclusive list of the types of state laws preempted by the regulation. This list includes "state laws purporting to impose requirements regarding . . . (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants." 12 C.F.R. § 560.2(b)(9). OTS further instructs that the first step in a preemption analysis is to determine whether the state law at issue is of a type listed in paragraph (b). *Silvas*, 514 F.3d at 1005. In doing so, the court does "not look merely to the abstract nature of the cause of action allegedly preempted but rather to the functional effect upon lending operations of maintaining the cause of action." *Naulty v. GreenPoint Mortg. Funding, Inc.*, Nos. C 09-1542, C 09-1545, 2009 WL 2870620, at *4 (N.D. Cal. 2009). If an application of the state law to the activities of the federal savings bank would "impose requirements" regarding the lending activities listed in paragraph (b), then the analysis ends there; the law is preempted. *Silvas*,

11

514 F.3d at 1005. Paragraph (c), which lists certain state laws that are not necessarily preempted, comes into play only if the state law is not covered by paragraph (b). *Id.*

### 1. Negligent Misrepresentation

Plaintiff's second cause of action, as stated in the Complaint, is a state law claim for negligent misrepresentation. Defendant asserts several defenses against this claim, including preemption by HOLA. There is some confusion over what, exactly, Plaintiff intends to allege in this claim. Though styled as a claim for "negligent misrepresentation" in the Complaint, Compl. 6, Plaintiff acknowledges that the title of this claim may have been a misnomer and attempts to reframe the claim as one for intentional deceit or fraudulent misrepresentation. Pl.'s Opp'n 8-9. What matters for purposes of Defendant's preemption defense, however, is not the label Plaintiff affixed to his claim, but whether Plaintiff's allegations, however styled, fall within the scope of the OTS preemption regulations.

In his misrepresentation claim, Plaintiff alleges that Defendants "concealed the nature and extent of negative amortization" and "failed to disclose and by omission failed to inform Plaintiff" that he would be unable to refinance his home due to the certain negative amortization built into his payment schedule. Compl. ¶¶ 38-39. Plaintiff also alleges that Defendants' representative at the closing did not provide Plaintiff the loan documentation in advance or give him an opportunity to review the documents before closing. Compl. ¶ 40. Because this claim is entirely based on Defendants' disclosures and the provision of credit-related documents, it falls within the specific type of preempted state laws listed in § 560.2(b)(9). *Silvas*, 514 F.3d at 1006. *See also, e.g.*, *Newsom v. Countrywide Home Loans, Inc.*, --- F. Supp. 2d ----, 2010 WL 2034769, at *10 (N.D. Cal. 2010) (finding that HOLA preempted fraud claim alleging that defendant failed to provide disclosures and misrepresented interest rates and fees); *Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d 1226, 1237-38 (E.D. Cal. 2010) (finding that HOLA preempted fraud claim alleging that defendant made material false representations regarding plaintiffs' loan); *Reyes v. Premier Home Funding, Inc.*, 640 F. Supp. 2d 1147, 1156 (N.D. Cal. 2009) (finding that HOLA preempted negligence claim alleging that Defendants failed to explain material terms of a loan agreement).

Therefore, under the approach put forth by OTS and adopted by the Ninth Circuit, the preemption analysis ends, and Plaintiff's misrepresentation claim is preempted. Because the preemption of Plaintiff's claim cannot be cured by amendment, Plaintiff's second cause of action is dismissed with prejudice as to the Bank Defendants.

### 2. Breach of Fiduciary Duty

Plaintiff's fourth cause of action alleges that Defendant Banks aided and abetted the IQ Defendants' breach of fiduciary duty. Compl. ¶¶ 61-62. Plaintiff's claim of breach of fiduciary duty is grounded in allegations that the IQ Defendants failed to make disclosures about the loan required by state and federal law, misrepresented the terms of the loan and the viability of refinancing, and serviced the loan out of compliance with TILA. Compl. ¶ 50-51, 59-62. The first step of the preemption analysis asks whether the cause of action for breach of fiduciary duty, as applied, is a type of state law contemplated in paragraph (b) of 12 C.F.R. § 560.2. *Silvas*, 514 F.3d at 1006. Here, the claim is entirely based on lending activities listed in paragraph (b), including terms of credit, § 560.2(b)(4), loan-related fees, § 560.2(b)(5), disclosures and advertising, § 560.2(b)(9), and processing, origination, and servicing of mortgages, § 560.2(b)(10). Thus, Plaintiff's breach of fiduciary duty claim is preempted by federal law. *See, e.g.*, *Naulty v. GreenPoint Mortg. Funding, Inc.*, Nos. C 09-1542, C 09-1545, 2009 WL 2870620, at *4 (N.D. Cal. 2009) (finding that OTS regulations preempted breach of fiduciary duty claim based on terms of credit provided by Wachovia, lack of disclosures, underwriting standards, and marketing and servicing of loans); *Bassett v. Ruggles*, No. CV-F-09-528, 2009 WL 2982895, at *16,22 (E.D. Cal. 2009) (finding that HOLA preempted claim of conspiracy to breach fiduciary duty alleging that bank paid broker an undisclosed yield spread premium in exchange for inducing borrower to agree to a higher interest rate than he could afford). Plaintiff's fourth cause of action is therefore dismissed with prejudice as to the Bank Defendants.

### 3. Violation of Business and Professional Code

Plaintiff's fifth cause of action, for unlawful business acts or practices in violation of California's Unfair Competition Law (UCL), Cal. Bus. and Prof'l Code § 17200, et seq., is also

preempted. Plaintiff predicates his UCL claim on violations of "the aforementioned laws and/or regulations," Compl. ¶ 70, that is, the violations of TILA and FCRA and the state common law claims of misrepresentation and aiding and abetting breach of fiduciary duty alleged in the complaint. As discussed above, the state law claims bear directly on lending activities listed in 12 C.F.R. § 560.2(b) and are preempted by OTS regulation; a UCL claim predicated on these preempted state laws is therefore also preempted. To the extent that the UCL claim is predicated on violations of TILA and FCRA, it is based on allegations that Defendants failed to disclose credit-related information and therefore falls into the category of preempted state laws listed in § 560.2(b)(9). Plaintiff's UCL claim is thus preempted by federal law and dismissed with prejudice.

### D. Remaining State Law Claims

#### 1. Conversion

Plaintiff's sixth cause of action alleges that Defendant committed conversion by wrongfully retaining the $9,915 held in escrow pursuant to the Holdback Agreement entered into by Plaintiff and Defendant World Savings Bank. Compl. ¶¶ 77-82. The Holdback Agreement authorized World Savings to retain $9,915 from the loan amount in a non-interest bearing escrow account, to be distributed upon completion of certain work on Plaintiff's property to Plaintiff or to persons who performed the work. Comp. ¶ 77; TRO Decl. Ex. 1. According to Plaintiff, since no work was ever performed on the property, the funds held in the escrow account should have been returned to Plaintiff. Compl. ¶ 79. Plaintiff alleges, however, that none of the money in the escrow account was distributed to Plaintiff or applied to the loan amount Defendants claimed Plaintiff owed in the Notice of Default and Notice of Trustee's Sale. Compl. ¶¶ 80-81.

To state a claim for conversion, a plaintiff must allege: (1) ownership or right to possess the subject property; (2) the defendant's conversion by a wrongful act or disposition of the property; and (3) damages. *Spates v. Dameron Hospital Ass'n*, 114 Cal.App.4th 208, 221, 7 Cal.Rptr.3d 597 (2003). Defendants argue that Plaintiff has failed to state a claim for conversion because the

allegations in the complaint do not establish that Plaintiff had a right to ownership or possession of the funds held in escrow at the time of the alleged conversion. Defs.' Mot 10. This Court agrees.

In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *St. Clare v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008). In this case, the allegations in the Complaint are contradicted by the terms of the Holdback Agreement submitted by Plaintiff in support of his TRO application. The Holdback Agreement provides for disbursal of the holdback funds only upon satisfactory completion of the work on Plaintiff's property. TRO Decl. Ex. 1. The Holdback Agreement explicitly states that if Plaintiff fails to fulfill any terms or conditions of the Agreement, the Lender may apply any remaining holdback funds to the balance of principal and interest due on Plaintiff's loan. *Id.* The Agreement also provides that "[i]f any amount remains in the Restricted Escrow Account after payment has been made for work done or materials supplied, Lender will apply such amount to the loan." *Id.* Nothing in the Agreement provides for disbursal of funds to Plaintiff except to pay for work performed on Plaintiff's property. Rather, the Agreement quite clearly provides that any funds not disbursed in payment for such work shall be applied to the principal and interest due on Plaintiff's loan. Since no work was ever performed, Plaintiff never acquired any right to ownership or possession of the holdover funds. Defendant is therefore correct that Plaintiff has failed to plead his ownership or right to possess the funds and, accordingly, has failed to state a claim for conversion. Moreover, Plaintiff's counsel conceded at the motion hearing that Plaintiff cannot allege any facts to cure this deficiency. Accordingly, Plaintiff's sixth cause of action is dismissed with prejudice.

### 2. Breach of Contract

Plaintiff's seventh cause of action alleges breach of contract. As Defendants note, Plaintiff's statement of this claim is quite cursory. However, liberally construed alongside Plaintiff's claim for conversion, the claim appears to allege that Defendants breached the Holdback

15

Agreement by failing to apply the funds held in the escrow account to the amount due on Plaintiff's loan. To state a claim for breach of contract under California law, Plaintiff must plead facts establishing the following elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239, 70 Cal.Rptr.3d 667 (2008). Defendants argue that Plaintiff's claim fails because Plaintiff has not alleged that he performed his obligations under the contract or was excused from performing. Defs.' Mot. 11. Plaintiff responds that Plaintiff in fact had no obligations under the contract. Pl.'s Opp'n. 14 n.4. However, the Holdback Agreement clearly imposes an obligation on Plaintiff to complete work on the Property. TRO Decl. Ex. 1 ("Lender has made the loan to Borrower on condition that Borrower complete certain work on the Property . . . ."). Plaintiff concedes that "[n]o work was in fact performed on the property," Compl. ¶ 78, and does not allege any facts that would excuse his nonperformance. Additionally, Plaintiff conceded at the motion hearing that he cannot in fact allege any such facts. Accordingly, Plaintiff fails to state a claim for breach of contract, and the seventh cause of action is dismissed with prejudice.

### 3.     Wrongful Foreclosure

Plaintiff's eighth and final cause of action alleges wrongful foreclosure. In his opposition, Plaintiff concedes that this claim is now moot. Accordingly, the eighth cause of action is dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part. The motion is denied as to Plaintiff's claim in his first cause of action that Defendant violated TILA by failing to disclose the certainty of negative amortization. The remainder of Plaintiff's first cause of action is dismissed with leave to amend. Plaintiff's second, fourth, and fifth causes of action for negligent misrepresentation, aiding and abetting breach of fiduciary duty, and violations of the UCL are dismissed with prejudice as to the Bank Defendants only, on preemption grounds. Plaintiff's third, sixth, seventh, and eighth causes of action for violations of the FCRA, conversion,

breach of contract, and wrongful foreclosure are dismissed with prejudice. Any amended pleading shall be filed within 30 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: September 17, 2010



LUCY H. KOH
United States District Judge

Case No.: 10-CV-01900-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS